## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

IN RE:

**CASE NO.: 6:17-bk-04654-KSJ**
**CHAPTER 7**

**RICHARD EPHRAIM FAXON,**

     **Debtor,**

**EVANGELINE MARY FAXON,**

     **Joint Debtor.**

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY

---

### NOTICE OF OPPORTUNITY TO
### OBJECT AND REQUEST FOR HEARING

**Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within twenty one (21) days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.**

**If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at George C. Young Federal Courthouse, 400 W. Washington Street, Suite 5100, Orlando, FL 32801 and serve a copy on the movant's attorney, Attorney for Secured Creditor, at Robertson, Anschutz & Schneid, PL, 6409 Congress Ave., Suite 100, Boca Raton, FL 33487, and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing, or consider the response and grant or deny the relief requested without a hearing.**

**If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

---

Secured Creditor, Lakeview Loan Servicing, LLC, by and through the undersigned counsel, hereby moves this Court, pursuant to 11 U.S.C. § 362(d), for a modification of the

automatic stay provisions for cause, and, in support thereof, states the following:

1.  Debtor(s), Richard Ephraim Faxon and Evangeline Mary Faxon, filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code on July 13, 2017.

2.  Jurisdiction of this cause is granted to the Bankruptcy Court pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 362(d), Fed. R. Bankr. P. 4001(a), and all other applicable rules and statutes affecting the jurisdiction of the Bankruptcy Courts generally.

3.  On December 18, 2015, Debtor(s) executed and delivered a Promissory Note ("Note") and a Mortgage ("Mortgage") securing payment of the Note in the amount of $163,818.00 to Lakeview Loan Servicing, LLC. The Mortgage was recorded on January 4, 2016 as Document ID Number 813860 of the Public Records of Portage County, Wisconsin. The loan was transferred to Secured Creditor. True and accurate copies of documents establishing a perfected security interest and ability to enforce the terms of the Note are attached hereto as Composite Exhibit "A." The documents include copies of the Note with any required indorsements, Recorded Mortgage, Assignment(s) of Mortgage, and any other applicable documentation supporting the right to seek a lift of the automatic stay and foreclose, if necessary.

4.  The mortgage provides Secured Creditor a lien on the real property located at 2650 FAWN LANE, Plover, Wisconsin 54467 in Portage County and legally described as stated in the mortgage attached in Composite Exhibit "A."

5.  The terms of the aforementioned Note and Mortgage have been in default, and remain in default, since January 1, 2017.

6.  The appraised value of the property is $154,500.00. See Exhibit "B" which is attached

hereto and permissible as a property valuation under Fed. R. Evid. 803(8).

7.  Based upon the Debtor(s)' schedules, the property is surrendered and claimed as non-exempt.  The Trustee has not abandoned the property.

8.  Secured Creditor's security interest in the subject property is being significantly jeopardized by Debtor(s)' failure to comply with the terms of the subject loan documents while Secured Creditor is prohibited from pursuing lawful remedies to protect such interest.  Secured Creditor has no protection against the erosion of its collateral position and no other form of adequate protection is provided.

9.  If Secured Creditor is not permitted to enforce its security interest in the collateral or be provided with adequate protection, it will suffer irreparable injury, loss, and damage.

10. Secured Creditor respectfully requests the Court grant it relief from the Automatic Stay in this cause pursuant to §362(d)(1) of the Bankruptcy Code, for cause, namely the lack of adequate protection to Secured Creditor for its interest in the above stated collateral.  The value of the collateral is insufficient in and of itself to provide adequate protection which the Bankruptcy Code requires to be provided to the Secured Creditor. Secured Creditor additionally seeks relief from the Automatic Stay pursuant to §362(d)(2) of the Bankruptcy Code, as the collateral is unnecessary to an effective reorganization of the Debtor's assets.

11. Secured Creditor has incurred court costs and attorney's fees in this proceeding and will incur additional fees, costs and expenses in foreclosing the Mortgage and in preserving and protecting the property, all of which additional sums are secured by the lien of the mortgage. Secured Creditor seeks an award of its reasonable attorneys' fees and costs, or alternatively, leave

to seek recovery of its reasonable attorneys' fees and costs in any pending or subsequent foreclosure proceeding.

12. A Proposed Order accompanies this Motion.  See Exhibit "C" attached hereto.

**WHEREFORE**, Secured Creditor, prays this Honorable Court enter an order modifying the automatic stay under 11 U.S.C. § 362(d) to permit Secured Creditor to take any and all steps necessary to exercise any and all rights it may have in the collateral described herein, to gain possession of said collateral, to waive the 14-day stay imposed by Fed.R.Bankr.P. 4001(a)(3), to seek recovery of its reasonable attorneys' fees and costs incurred in this proceeding, and to any such further relief as this Honorable Court deems just and appropriate.

**I HEREBY CERTIFY** that on September 18, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, and a true and correct copy has been served via CM/ECF or United States Mail to the following parties:

Richard Ephraim Faxon
305 Lago Circle Apt. 100
Melbourne, FL 32904

Evangeline Mary Faxon
305 Lago Circle Apt. 100
Melbourne, FL 32904

Cynthia E Lewis
James H Monroe PA
PO Box 540163
Orlando, FL 32854 0163

Arvind Mahendru
5703 Red Bug Lake Road
Suite 284
Winter Springs, FL 32708

United States Trustee - ORL7/13
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-241-1969
By: /s/ Bouavone Amphone
Bouavone Amphone, Esquire
Florida Bar Number 20644
Email: bamphone@rasflaw.com

**COMPOSITE EXHIBIT "A"**

# NOTE

December 18, 2015                         Fort Washington,                         Pennsylvania
[Date]                                    [City]                                  [State]

**2650 FAWN LANE, Plover, WI 54467**
**[Property Address]**

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$163,818.00**      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Lakeview Loan Servicing, LLC, a Limited Liability Corporation.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.875 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

Solely for the purpose of computing interest, a monthly payment received by the Note Holder within 30 days prior to or after the date it is due will be deemed to be paid on such due date.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st**      day of each month beginning on **February 1, 2016.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest and any other items in the order described in the Security Instrument before Principal. If, on **January 1, 2046,**      I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **4425 Ponce De Leon Boulevard, MS5-251**
**Coral Gables, FL 33146**
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$770.33.**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15**      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000 %** of my overdue payment. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

WISCONSIN FIXED RATE NOTE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3250 1/01
Modified for FHA                                                                          Initials: _____
Ellie Mae, Inc.                                Page 1 of 2                              FHA3200WINT   0815
                                                                                        FHA3200NOT (CLS)
                                                                                        12/17/2015 02:46 PM PST

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
**RICHARD E FAXON**

Lender: Lakeview Loan Servicing, LLC

Loan Originator: Carlos Javier Zambrano

**Pay To The Order Of**

**WITHOUT RECOURSE**
**LAKEVIEW LOAN SERVICING LLC**

BY: _____
Julio Aldecocea, Senior Vice President

[Sign Original Only]

WISCONSIN FIXED RATE NOTE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3250 1/01
Modified for FHA
Ellie Mae, Inc.                                                Page 2 of 2                                                Initials: _____
                                                                                                                           FHA3200WINT  0815
                                                                                                                           FHA3200NOT (CLS)
                                                                                                                           12/17/2015 02:48 PM PST

**813860**

**MORTGAGE**

CYNTHIA A. WISINSKI
REGISTER OF DEEDS
PORTAGE COUNTY
STEVENS POINT, WI
RECORDED ON
01/04/2016 7:30 AM

REC FEE: 30.00
PAGES: 10
FEE EXEMPT:

DOCUMENT NUMBER
When recorded, return to:
Lakeview Loan Servicing, LLC
Attn: Post Closing
1301 Virginia Drive Suite 325
Fort Washington, PA 19034

LOAN #
PARCEL IDENTIFIER NUMBER  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



———————— [Space Above This Line For Recording Data] ————————

MIN:
MERS PHONE #: 1-888-679-6377

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.
(A) "Security Instrument" means this document, which is dated  **December 18, 2015,**  together with all Riders to this document.
(B) "Borrower" is  RICHARD E FAXON AND EVANGELINE FAXON, HUSBAND AND WIFE.

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is  Lakeview Loan Servicing, LLC.

Lender is  a Limited Liability Corporation,  organized and existing
under the laws of  Delaware.
Lender's address is  4425 Ponce De Leon Boulevard, MS5-251, Coral Gables, FL 33146.

(E) "Note" means the promissory note signed by Borrower and dated  **December 18, 2015.**  The Note states that Borrower owes Lender  ONE HUNDRED SIXTY THREE THOUSAND EIGHT HUNDRED EIGHTEEN AND NO/100* *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. **$163,818.00**  )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  **January 1, 2046.**
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:
☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ Planned Unit Development Rider
☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic

WISCONSIN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3050 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                    Page 1 of 9

Initials: _____

WIEFHA15DE  0915
WEDEED (CLS)
12/17/2015 02:48 PM PST

Portage County, WI          Document # 813860          Page 10 of 10

Loan #        :        

### Exhibit A

LEGAL DESCRIPTION

The following described property:

Lot 5, Block 9 of second addition to Booth Subdivision, Located in the SW1/4 of section 10,
Township 23 North, Range 8 East, Village of Plover, Portage County, Wisconsin.

Assessor's Parcel No:      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

# MORTGAGE

DOCUMENT NUMBER
**When recorded, return to:**
**Lakeview Loan Servicing, LLC**
**Attn: Post Closing**
**1301 Virginia Drive Suite 325**
**Fort Washington, PA 19034**

▮

PARCEL IDENTIFIER NUMBER **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**

▮ —————————— [Space Above This Line For Recording Data] —————————— ▮

**MERS PHONE #: 1-888-679-6377**

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.
**(A) "Security Instrument"** means this document, which is dated   **December 18, 2015,**      together with all Riders to this document.
**(B) "Borrower"** is   **RICHARD E FAXON AND EVANGELINE FAXON, HUSBAND AND WIFE.**

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is   **Lakeview Loan Servicing, LLC.**

Lender is   **a Limited Liability Corporation,**                          organized and existing
under the laws of   **Delaware.**
Lender's address is   **4425 Ponce De Leon Boulevard, MS5-251, Coral Gables, FL 33146.**

**(E) "Note"** means the promissory note signed by Borrower and dated   **December 18, 2015.**      The Note states that Borrower owes Lender   **ONE HUNDRED SIXTY THREE THOUSAND EIGHT HUNDRED EIGHTEEN AND NO/100* *** * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S.   **$163,818.00**          )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   **January 1, 2046.**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:
☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ Planned Unit Development Rider
☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic

WISCONSIN – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3050 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                   Page 1 of 9                               Initials: ▮▮▮
WIEFHA15DE  0915
WIEDEED (CLS)
12/17/2015 02:48 PM PST

tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the   **COUNTY**   of   **Portage**

[Type of Recording Jurisdiction]      [Name of Recording Jurisdiction]:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**
**PIN# 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**

which currently has the address of   **2650 FAWN LANE, Plover,**

[Street] [City]

Wisconsin   **54467**         ("Property Address"):
          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1.   Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept

WISCONSIN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3050 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                Page 2 of 9                    Initials: _____
                                                                              WIEFHA15DE   0915
                                                                              WIEDEED (CLS)
                                                                              12/17/2015 02:46 PM PST

any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5.   Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but

WISCONSIN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3050 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                    Page 3 of 9

Initials: _____
WIEFHA15DE   0915
WIEDEED (CLS)
12/17/2015 02:48 PM PST

not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 24 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding

WISCONSIN – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3050 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                    Page 4 of 9                                    WIEFHA15DE    0915
                                                                                                 WIEDEED (CLS)
                                                                                                 12/17/2015 02:48 PM PST

Initials:

in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying Reasonable Attorneys' Fees (as defined in Section 27) to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

**WISCONSIN** – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3050 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                    Page 5 of 9

Initials:

WIFHA15DE   0915
WIEDEED (CLS)
12/17/2015 02:48 PM PST

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 27), property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer,

WISCONSIN – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3050 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                   Page 6 of 9

Initials: _____

WIFHA15DE   0915
WIDEED (CLS)
12/17/2015 02:48 PM PST

the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**22. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn- St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**23. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Section 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**WISCONSIN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3050 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                                                Page 7 of 9

Initials: _____

WIEFHA15DE   0915
WIEDEED (CLS)
12/17/2015 02:48 PM PST

**24. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 24, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 27) and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 27); (b) to all sums secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Section 22, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24 or applicable law.

**25. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**26. Accelerated Redemption Periods.** If the Property is a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Borrower agrees to the provisions of Section 846.101 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate of 20 acres or less six months after a foreclosure judgment is entered. If the Property is other than a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church, or a tax-exempt charitable organization, Borrower agrees to the provisions of Section 846.103 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate three months after a foreclosure judgment is entered.

**27. Attorneys' Fees.** If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "Reasonable Attorneys' Fees" shall mean only those attorneys' fees allowed by that Chapter.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____     12-18-15 (Seal)
RICHARD E FAXON                 DATE

_____     12-18-15 (Seal)
EVANGELINE FAXON             DATE

State of WISCONSIN
County of PORTAGE

This instrument was acknowledged before me on DECEMBER 18, 2015 (date) by RICHARD E FAXON AND EVANGELINE FAXON (name(s) of person(s)).

_____
(Signature of Notarial Officer)

Title and Rank: NOTARY

My Commission Expires: 9-8-19

CHARLES N. BERGS
NOTARY PUBLIC
STATE OF WISCONSIN

WISCONSIN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3050 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                 Page 8 of 9

Initials: _____
WIEFHA15DE 0915
WEDEED (CLS)
12/17/2015 02:48 PM PST

Lender: Lakeview Loan Servicing, LLC
NMLS ID: █████
Loan Originator: Carlos Javier Zambrano
NMLS ID: █████

THIS INSTRUMENT WAS DRAFTED BY:
LAKEVIEW LOAN SERVICING, LLC
4425 PONCE DE LEON BOULEVARD, MS5-251
CORAL GABLES, FL 33146

WISCONSIN – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**     Form 3050 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                    Page 9 of 9

Initials: _____
WIEFHA15DE   0915
WEDEED (CLS)
12/17/2015 02:48 PM PST

**Exhibit A**

LEGAL DESCRIPTION

The following described property:

Lot 5, Block 9 of second addition to Booth Subdivision, Located in the SW1/4 of section 10, Township 23 North, Range 8 East, Village of Plover, Portage County, Wisconsin.

Assessor's Parcel No:      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

# ASSIGNMENT

Document Number

When Recorded Return To:

M&T BANK
10TH FLOOR - ASSIGNMENTS
P.O. BOX 1850
BUFFALO, NY  14240

Parcel ID No. 182-025-003

**CYNTHIA A. WISINSKI**
**REGISTER OF DEEDS**
**PORTAGE COUNTY**
**STEVENS POINT, WI**
**RECORDED ON**
**06/09/2017  7:30 AM**

**REC FEE: 30.00**
**PAGES: 3**
**FEE EXEMPT:**

---

**THIS IS A STYLE "B" FORM UNDER WIS ACT 110 WITH 3X3 SPACE IN UPPER RIGHT CORNER**
Portage, Wisconsin
**SELLER'S SERVICING**
**SELLER'S LENDER ID#:**

**SIS #: 1-888-679-6377**
Date of Assignment: May 10th, 2017
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR LAKEVIEW
LOAN SERVICING, LLC ITS SUCCESSORS AND ASSIGNS at  PO BOX 2026, FLINT, MI  48501-2026
Assignee: LAKEVIEW LOAN SERVICING, LLC at 4425 PONCE DE LEON BLVD, CORAL GABLES, FL  33146

Executed By: RICHARD E FAXON AND EVANGELINE FAXON, HUSBAND AND WIFE  To: MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR LAKEVIEW LOAN SERVICING, LLC
ITS SUCCESSORS AND ASSIGNS
Date of Mortgage:  12/18/2015 Recorded:  01/04/2016  in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.:
813860  In the County of Portage, State of Wisconsin.

Parcel ID No. 182-025-003

Property Address: 2650 FAWN LANE, PLOVER, WI  54467

Legal:  See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $163,818.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR LAKEVIEW LOAN
SERVICING, LLC ITS SUCCESSORS AND ASSIGNS
On May 10th, 2017

By:
Joshua E Vliman, Assistant Secretary

ASSIGNMENT Page 2 of 2

STATE OF New York
COUNTY OF Erie

On the 10th day of May in the year 2017 before me, the undersigned Notary Public in and for said State, personally appeared Joshua E Wikman, Assistant Secretary, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

WITNESS my hand and official seal,

DANIEL JAQUES
Notary Expires: 08/24/2019
Qualified in Erie County

Daniel Jaques
Notary Public, State of New York
Qualified in Erie County
REG # 01JA6329365
My Commission Expires: 08/24/2019

(This area for notarial seal)

**Prepared By:  JESSICA BRYSON,  M&T BANK LIEN RELEASE DEPT 4TH FLOOR, PO BOX 5178, BUFFALO, NY  14240-1288
1-800-724-2224**

**Exhibit A**

LEGAL DESCRIPTION

The following described property:

Lot 5, Block 9 of second addition to Booth Subdivision, Located in the SW1/4 of section 10, Township 23 North, Range 8 East, Village of Plover, Portage County, Wisconsin.

Assessor's Parcel No:     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

**EXHIBIT "B"**

Real Estate Valuation Services

**MarkToMarket.com**

Mark To Market
365 West Proctor Suite 300, Newark, NE 08101
Telephone: 877 626 2767
Fax: 301 560 6323
Email : Info@marktomarket.com

## Request Details

| | |
|---|---|
| Client Name | M&T Bank |
| Client Loan Number | ▮▮▮▮ |
| Alt ID | |
| Project ID | bankruptcy |
| Product Type | Exterior Evaluation |
| Delivered Date | 08/31/2017 |
| Request  D | 1412429 |
| Order  D | 12554868 |
| Address | 2650 Fawn Ln, Plover, WI 54467 |




## Property Transaction History

| Fidelity Data | | | | Agent Data | |
|---|---|---|---|---|---|
| Sale1 Date | | Mortgage1 Date | | Recent Sale Price | |
| Sale1 Buyer1 Name | | Mortgage1 Loan Amount | | Recent Sale Date | |
| Sale1 Buyer2 Name | | Mortgage1 Lender Name | | Recent Sale Agent Name | |
| Sale 1 Sale Price | | Mortgage1 Loan Rate | | Recent Sale Agent Phone | |
| Sale2 Date | | Mortgage2 Date | | List Price at Time of Sale | |
| Sale2 Buyer1 Name | | Mortgage2 Loan Amount | | Original List Price | |
| Sale2 Buyer2 Name | | Mortgage2 Lender Name | | Original List Date | 7/16/2015 |
| Sale2 Sale Price | | Mortgage2  Loan Rate | | Previous Sale Price | |
| Sale3 Date | | Mortgage3 Date | | Previous Sale Date | |
| Sale3 Buyer1 Name | | Mortgage3 Loan Amount | | Current List Price | 169,900 00 |
| Sale3 Buyer2 Name | | Mortgage3 Lender Name | | Current List Date | |
| Sale3 Sale Price | | Mortgage3 Loan Rate | | List Agent Name | |
| | | | | List Agent Phone | |
| | | | | Listing Status | Expired |
| | | | | Current Agent Name | ▮▮▮ |
| | | | | Current Agent Phone | ▮▮▮ |

## Comparable Data

| | Subject | Sale1 | Sale2 | Sale3 | Listing1 | Listing2 | Listing3 |
|---|---|---|---|---|---|---|---|
| MLSNumber | | 1702042 | 1701320 | 1702054 | 1705500 | 1705512 | 1704991 |
| Address1 | 2650 Fawn Ln | 410 Canterbury Dr | 2320 Springville Dr | 2121 Hickory Dr | 530 Coventry Dr | 3321 Evergreen Dr | 1940 Ridgewood Ct |
| ZipCode | 54467 | 54467 | 54467 | 54467 | 54467 | 54467 | 54467 |
| Property Type | Single Family Detach | Single Family Detach | Single Family Detach | Single Family Detach | Single Family Detach | Single Family Detach | Single Family Detach |
| Original List Price | | $149,900.00 | $164,900.00 | $178,900.00 | $159,900.00 | $164,900.00 | $169,900.00 |
| Current List Price | $169,900.00 | | | | $159,900.00 | $164,900.00 | $169,900.00 |
| List Date | 7/16/2015 | 4/13/2017 | 3/14/2017 | 4/13/2017 | 8/21/2017 | 8/21/2017 | 8/7/2017 |
| Sale Price | | $154,500.00 | $164,900.00 | $160,000.00 | | | |
| Sale Date | | 5/11/2017 | 4/21/2017 | 6/13/2017 | | | |
| Style | Split Entry/Raised Ra | Split Entry/Raised Ra | Split Entry/Raised Ra | Split Entry/Raised Ra | Split Entry/Raised Ra | Split Entry/Raised Ra | Split Entry/Raised Ra |
| Distance From Subject | | 0.57 | 0.99 | 0.60 | 0.58 | 2.53 | 1.21 |
| Days on Market | | 80 | 42 | 64 | 16 | 16 | 25 |
| Exterior | Metal/Vinyl | Metal/Vinyl | Metal/Vinyl | Wood | Metal/Vinyl | Hardboard/Masonite | Metal/Vinyl |
| Year Built | 1974 | 1978 | 1976 | 1982 | 1976 | 1984 | 1980 |
| Above Grade SF | 2572 | 2484 | 2240 | 2276 | 2052 | 2387 | 2002 |
| Finished SF | 2572 | 2484 | 2240 | 2276 | 2052 | 2387 | 2002 |
| Basement Rooms | 2 | 2 | 1 | 3 | 2 | 2 | 2 |
| Basement SqFt | 676 | 1100 | 1440 | 1138 | 800 | 800 | 600 |
| Basement % Finished | 40.00% | 99.00% | 75.00% | 99.00% | 90.00% | 85.00% | 50.00% |
| Condition | Average | Average | Average | Good | Average | Average | Average |
| Total Rooms | 7 | 7 | 7 | 8 | 8 | 8 | 7 |
| Bedrooms | 4 | 3 | 3 | 4 | 4 | 4 | 3 |
| Full Baths | 2 | 2 | 2 | 2 | 2 | 1 | 2 |
| Half Baths | 1 | 0 | 0 | 0 | 0 | 1 | 0 |
| Parking | 2 ATTACHED | 2 ATTACHED | 2 ATTACHED | 2 ATTACHED | 2 ATTACHED | 2 ATTACHED | 2 ATTACHED |
| Transaction Type | Fair Market | Fair Market | Fair Market | Fair Market | Fair Market | Fair Market | Fair Market |
| Site Size | 0.54 | 0.43 | 0.48 | 0.46 | 0.43 | 0.46 | 0.98 |
| Pool | None | None | None | None | None | None | None |
| Above Grade P/SF | $0.00 | $62.00 | $74.00 | $70.00 | $0.00 | $0.00 | $0.00 |
| Finished Price P/SF | $0.00 | $62.00 | $74.00 | $70.00 | $78.00 | $69 00 | $85.00 |
| Above Grade List P/SF | $0.00 | $60.00 | $74.00 | $79.00 | $78.00 | $69 00 | $85.00 |

## Comparable Comments

| | |
|---|---|
| Sale1 | Equal here perfect comp and it sold higher multiple offers are common now with low inventroy in central Wisconsin,,. |
| Sale2 | Its in same location area but subjects not as nice a house so having to adjust here .Superior all up dated interior ,low inventory checked and no other comps with in range so here shows values,Listed high 2011, front entry door 2017, new siding front of home, majority of windows 2006, furnace 2008, kitchen countertops 2017, some interior painting 2017 on main level and fenced back yard |
| Sale3 | Superior owner giving a concession for $3,000.Its a up dated house are subjects not with having a visual here its in need of all exterior up dating everything is out dated are subject is. No other comparables here . Low inventory noted. |
| Listing1 | Equal here just recent being listed /Its going to come down now with children all back to school some buyers wait till out of school so its staraing to sklow down.It was listed just a little to high. The sellers are banking on low inventory for the hike. Simmilar comp here and in Plover same area.. |
| Listing2 | Superior all renovated in and out ! The thimng here is a btter comp , and having a struggle to fine comparables to match, have adjusted ,check are subjects photos its in need of up dates / Price will reflect its current value. |
| Listing3 | Superior reading the remarks here is just so important things wrong here about subject. To this comp its well cared for are SUBJECT NOT! nOTICED ARE SUBJECTS BEEN NEGLECTED .See photos Massively covered with trees well out grown to big need to be removed house needs complete exterior up dates .Low inventory no other comparables in area to match the subejct , assessor is in the realm of value here even lower. |

## Subject Comments

| | |
|---|---|
| Property | The property is in average shape and condition just barely . Its going to be needing up dates to the exterior . The landscaping here does need to be adressed but all in all its average condition . Does not represent the homes in neighborhood which some are newer and some are well cared for . Good location.. |
| Neighborhood | Its a relatively nice area of the city and located very close to major arterries to and from Jobs.  ts in a city where wages are comparitively higher thwen other locations in central Wisconsin . Heavily industrious city and state college city also.. |
| The Primary or main factor(s) affecting the value of this Property is/are | its exterior is out dated! |

## Zip Code Market Activity

| | | | |
|---|---|---|---|
| FNIS-# SF Properties | | Total Number of Properties Currently Listed in MLS | 64 |
| FNIS - Own Occ % | | Total Number of Sales Past 3 Months from MLS | 9 |
| FNIS - # Sales past 90 Days | | Number of Comparable/Similar Sales Past 3 Months | 1 |
| FNIS - # REO Past 90 Days | | Based on my 'As Is' value of $154,500.00, the subject property's As Is Value is the 1 lowest priced property out of 3 competitive, or similar, properties currently listed in the market or neighborhood. | |
| FNIS - Median Sale Price Past 90 Days | | Based on my 'As Repaired' value of $154,500.00, the subject property's As Repaired Value is the 1 lowest priced property out of 3 competitive, or similar, properties currently listed in  he market or neighborhood. | |
| | | Median Price Last 3 Months | $160,000.00 |

## Property Neighborhood Data / HOA Info / Census Data

| Property Neighborhood Data | | HOA Info | | Census Data | |
|---|---|---|---|---|---|
| Occupancy Status | Occupied | HOA Name | | Housing Units | 30054 |
| Property Rating | Average Condition, Pride of Ownership | HOA Fee | | Homeownership Rate | 70.00 % |
| Block Rating | Average Pride of Ownership, No Abandoned Houses | HOA Contact | | Median Household Income | $50,494.00 |
| Neighborhood Rating | Strong Residential Community, Evident Pride of Ownership | HOA Contact Number | | Persons Per Square Mile | 87.00 |
| Tax ID | 173470905 | HOA Fee Period | | Est. Rent For Subject | $800.00 |
| Typical Rent Type | Market | | | Est Annual Taxes | $32,100.00 |
| Average Marketing Time | 89 | | | | |
| Most Probable Buyer | Owner | | | | |
| Neighborhood Price Range | $112,900.00 To $173,900 00 | | | | |
| Competitive Listings Supply Trend | Stable | | | | |
| Area Type | Suburban | | | | |

## Agent Data / Review Conclusions

| Agent Data | | Review Conclusions | |
|---|---|---|---|
| As Is Value | $154,500.00 | As Is Value | |
| Suggested List Price As Is | $159,000.00 | | |
| Suggested List Price As Repaired | $159,000.00 | | |
| Estimated Repairs | 0.00 | Estimated Repairs | |
| Estimated Profit | 0.00 | Estimated Profit | |
| Value As Repaired | $154,500.00 | Value As Repaired | |
| Quick Sale | $139,900.00 | Quick Sale | |
| Neighborhood Price Trend | Stable | Review Comments | |
| Valuation Date | 08/31/2017 | Reconciled Value | |
| Marketing Time (Days) | 89 | Reconciled Comments | |

## Repairs

| Type | Description Of Repair | Room | Low Estimate | High Estimate | Recommend Repair | Damage Source |
|---|---|---|---|---|---|---|
| Total | | | | | | |



| Subject | |
|---|---|
| Image | Details/Description |
|  | Additional Attachment<br>adress |
|  | Additional Attachment<br>angle covered majority of the house |

Additional Attachment
access to forest a really wooded lot shows by not caring for the house as well.



Additional Attachment
street sign verification



Additional Attachment
(cont.)

Address Verification
on mail box

Front

Anyway 31 to 41 trees here cant see house and original siding needs drastic up dates for the price assessed on it at $151,100.00



2017/08/29

Left Side (Exterior)
its remarkable no trees fall on this house in a storm

2017/08/29

Left Street Scene



Right Side (Exterior)
composite siding cheapest to use



2017/08/29

**Repairs**

| Image | Details/Description |
| --- | --- |

**Sales Comparisons**

| Images | Details/Description |



Sold Comp 1
equal



Sold Comp 2

Sold Comp 3



**Listing Comparisons**

| Images | Details/Description |
|---|---|



Listed Comp 1
equal



Listed Comp 2



**Vendor Information -**

Name:

Phone Number:

Email Address:





Real Estate Valuation Services

# INVOICE

| **Invoice#** | | **Tax ID** | | **Terms:** Net 15 |
|---|---|---|---|---|

**537 East Pete Rose Way, Suite 300**

**Cincinnati, OH 45202**

**Phone 877-626-2767**

**Fax 301-560-6323**

**8/31/2017**

## For Services Rendered in the Evaluation and/or Inspection of:

| | |
|---|---|
| **Invoice #:** | |
| **Master Invoice#:** | M&T Bank |
| **Project ID#** | bankruptcy |
| **Document ID#** | 12554868 |
| **Address** | 2650 Fawn Ln  Plover, WI 54467 |
| **Date Submitted** | 08/28/2017 |
| **Type** | Exterior Evaluation |
| **Amount** | $100.00 |
| **Client** | M&T Bank |

# EXHIBIT "C"

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

IN RE:                                                        CASE NO.: 6:17-bk-04654-KSJ
                                                                              CHAPTER 7

**RICHARD EPHRAIM FAXON,**

    **Debtor,**

**EVANGELINE MARY FAXON,**

    **Joint Debtor.**

_____/

**ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**

THIS CASE came on consideration without a hearing on Lakeview Loan Servicing, LLC's ("Secured Creditor") Motion for Relief from Stay (Docket No. ##).  No appropriate response has been filed in accordance with Local Rule 2002-4.  Accordingly, it is:

**ORDERED:**

1. Secured Creditor's Motion for Relief from Automatic Stay is GRANTED.

2. The automatic stay imposed by 11 U.S.C. § 362 is terminated as to the Secured Creditor's

1

interest in the following property located at 2650 FAWN LANE, Plover, Wisconsin 54467 in

Portage County, Wisconsin and legally described as:

Lot 5, Block 9 of second addition to Booth Subdivision, Located in the SW1/4 of section 10, Township 23 North, Range 8 East, Village of Plover, Portage County, Wisconsin.

3.   The Order Granting Relief from Stay is entered for the sole purpose of allowing Secured

Creditor to exercise any and all *in rem* remedies against the property described above. Secured

Creditor shall not seek an *in personam* judgment against Debtor(s).

4.   Secured Creditor is further granted relief in order to contact the Debtor(s) by telephone or

written correspondence in order to discuss the possibility of a forbearance agreement, loan

modification, refinance agreement or loan workout/loss mitigation agreement.

5.   Attorneys' fees and costs in the amount of $526.00 are awarded for the prosecution of

this Motion for Relief from Stay.


### ###

Attorney, Bouavone Amphone, is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.